COMMONWEALTH *vs.* WONG CHUNG & another.

Suffolk.    May 19, 1904. — June 23, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Deserter. Jury and Jurors. Practice, Criminal,* New trial.

U. S. St. 1865, c. 79, § 21, depriving a deserter from the United States army of his rights as a citizen of the United States applies only to persons legally adjudged guilty of desertion by a competent tribunal, and the fact that a person is recorded as a deserter in the office of the adjutant general of this Commonwealth does not subject him to the penalties of the crime of desertion under that statute, even if it is admitted that this entry in the record is true.

Whether the penalty imposed by U. S. St. 1865, c. 79, § 21, on a person found guilty
of desertion from the army of the United States; depriving him of his rights as
a citizen of the United States, deprives him also of a previously existing right
as a citizen of this Commonwealth to vote for members of the General Court,
and thus disqualifies him as a juror, *quære.*

Under the laws of this Commonwealth one who at some previous time has been
convicted of felony can be placed on the jury list as a person of good moral
character, although under R. L. c. 176, § 5, his name may be removed by the
revisory board in their discretion, unless he has been pardoned on the ground of
innocence.

The granting of a new trial in a criminal case on account of the disability of a
juror which was not known to the defendant until after his conviction is within
the discretion of the presiding judge.

INDICTMENT for murder in the second degree returned by the grand jury in the Superior Court for the county of Suffolk on November 2, 1903.

At the trial in the Superior Court before *White*, J., a verdict of guilty of murder in the second degree was returned against the defendants Wong Chung and Charlie Chin, a third defendant who had been indicted with them not having been apprehended.

Thereafter the defendants filed a motion for a new trial on account of the alleged disqualification of one of the jurors, and requested certain rulings of law. The judge refused to make the rulings requested and denied the motion. The defendants alleged exceptions, raising the questions stated in the opinion.

*F. Paul*, for the defendants.

*J. D. McLaughlin*, Second Assistant District Attorney, for the Commonwealth.

KNOWLTON, C. J. The defendants, after a conviction of murder in the second degree, filed a motion for a new trial on account of the alleged disqualification of one of the jurors. It appeared at the hearing that the juror enlisted in the army of the United States in the War of the Rebellion, and that the record in the office of the adjutant general of the Commonwealth shows him marked as a deserter in the year 1862. It was admitted, at the hearing on the motion, that this entry in the record is true. It was also shown that on June 22, 1868, he was convicted of breaking and entering a shop and stealing goods therein, and was sentenced to imprisonment in the State prison for the term of three years. On July 30, 1870, he was released from imprisonment under this sentence, by the Governor with

the advice and consent of the Council, on condition that .if he should be convicted of any crime punishable by imprisonment, before the expiration of the sentence, he should serve the remainder thereof.

The defendants contend that he was disqualified to serve as a juror because of his desertion, which under the U. S. St. 1865, c. 79, § 21, deprived him of his rights as a citizen of the United States and rendered him incapable of holding any office of trust or profit under the United States. They contend, under the R. L. c. 176, § 1, that only persons qualified to vote for representatives of the General Court éan serve as jurors, and that under article 3 of the amendments to the Constitution of Massachusetts, none but citizens of Massachusetts can vote for members of the General Court, and that, having lost his rights as a citizen of the United States, he cannot exercise the rights of an elector as a citizen of Massachusetts. See *Opinion of the Justices*, 122 Mass. 594. R. L. c. 1, § 1.

We are of opinion that the last part of this contention is not well founded. In the first place, the statute depriving one of his rights of citizenship under the government of the United States does not take effect upon any person until he has been legally adjudged guilty of desertion by a competent tribunal. This is a highly penal statute, and it would be dangerous to attempt to give it effect otherwise than upon sufficient proof, in a proceeding regularly inaugurated and properly conducted to ascertain the facts. It has often happened that a soldier has been entered on the rolls as a deserter, when there was no real desertion. The disqualification under the statute first arises when the soldier is tried and found guilty of desertion. This is the doctrine stated in *State* v. *Symonds,* 57 Maine, 148. The admission which was made at the hearing upon the motion for a new trial, if competent, should be considered only upon the question of the juror's character and his fitness to serve in a trial. In regard to the circumstances of the desertion, whether it was entirely without excuse or with palliating conditions, nothing appears. In the exercise of his discretion in passing upon the motion, the judge would give the admitted facts such effect as they ought to have.

We do not find it necessary to decide whether, if the juror

had been found guilty of desertion, his loss of his rights as a citizen of the United States would have deprived him of his previously existing right as a citizen of Massachusetts to vote for members of the General Court. It is at least doubtful whether this result would have followed. The failure of the defendants to object to the juror until after the verdict, will be considered in connection with the other branch of the case.

The defendants also contend that the juror's conviction of a felony nearly thirty-six years before the trial of their case, is a disqualification which entitles them to a new trial as a matter of law. At common law this would be a disqualification, even after the lapse of so long a time. 3 Bl. Com. 363. 4 Bl. Com. 349, 350, 352. 5 Bac. Abr. 347. In this Commonwealth the qualifications of jurors are prescribed by statutes which cover the whole subject and supersede the common law. " A person qualified to vote for representatives to the General Court shall be liable to serve as a juror, except that the following persons shall be exempt." Following this statement in the R. L. c. 176, § 1, is a long list of public officers and others, who are exempt from service. The provisions for the preparation and publication of the list of jurors in cities and towns are found in §§ 4, 5, 6, 7, 8 and 9 of this chapter. In Boston this list is to be prepared by the board of election commissioners, in other cities by the registers of voters, and in towns by the selectmen. This list is to contain the names " of such inhabitants of the city or town, of good moral character, of sound judgment and free from all legal exceptions, not absolutely exempt from jury service, as they think qualified to serve as jurors." First, the members of the board must use their judgment in determining what persons possess the statutory qualifications. In considering the qualifications of a person who has been convicted of a crime, that fact naturally would be deemed important on the question whether he is of good moral character. But in this Commonwealth it is not the law that persons convicted of crime shall be permanently deprived of their civil rights. Our legislation, more humane and charitable than the law of early times, recognizes the possibility of repentance and reformation. A person convicted of a crime, however heinous, is not incompetent to testify in court, although the fact may be shown to affect his credibility.

R. L. c. 175, §§ 20, 21. Outlawry and attainder are no parts of our system. Unless by special provision of statute in a particular case, conviction of crime does not disqualify one from holding office or exercising other civil rights after he has suffered punishment, if he is trustworthy and possessèd of the other necessary qualifications. Returning to this statute, there is nothing to prevent the board from putting upon the jury list the name of a former criminal, if they find him to be of good moral character and otherwise suitable. When the list is complete it is posted for ten days, and submitted for revision and acceptance to the board of aldermen in cities, or the single legislative board if there is one, and to the voters in town meetings in towns. The statute recognizes the fact that the list may contain the names of persons who previously had been convicted of crime, in the provision in § 5 that the revisory board may remove therefrom the names of such persons, unless they have been pardoned on the ground of innocence of such crime. This allows, but does not require, a previous conviction of crime to be made a reason for the removal of a name, even if the person has afterwards lived for forty years without reproach, and is of good moral character.

Section 8 provides differently for a different condition, as follows: "If a person whose name has been so placed in the jury box is convicted of a scandalous crime or is guilty of gross immorality, his name shall be withdrawn therefrom by the board of selectmen and he shall not be returned to serve as a juror." This relates to the case of one who is shown, by the facts stated, not to be of good moral character, after his name has been placed in the jury box. In such a case the name must be removed, while in the case of a person who had been convicted before the list was made up and who was put upon the list presumably because he was thought to be of good moral character, the name may be removed or not, at the option of the revisory board, unless he is pardoned on the ground of his innocence. We think these statutes make it plain that one who is found to be of good moral character by the board that prepares the list, and whose name is not removed under the authority of the statute by the revisory board, is not disqualified from serving as a juror merely because, at some time, perhaps many years before, he had been convicted of a felony.

But if the facts shown in this case would have been a ground of challenge for cause, the defendants were not entitled as matter of law to have the verdict set aside. The judge found that they did not know the facts until after the trial; but even in such a case the motion subsequently made is addressed only to the discretion of the court. On this subject there is considerable conflict in the decisions, but the great weight of authority is in favor of the proposition just stated. The matter was carefully considered by Chief Justice Gray in *Wassum* 'v. *Feeney*, 121 Mass. 93. There was a motion for a new trial because one of the jurors was an infant only nineteen years of age. In the opinion it is said that " When a party has had an opportunity of challenge, no disqualification of a juror entitles him to a new trial after verdict." A long extract from the opinion in this case is quoted with approval by Chief Justice Fuller in *Kohl* v. *Lehlback*, 160 U. S. 293, who states the rule in a similar way, the juror in that case being an alien. Other cases of similar import are *Ryan* v. *Riverside & Oswego Mills*, 15 R. I. 436 ; *State* v. *Cosgrove*, 16 R. I. 411; *State* v. *Jackson*, 27 Kans. 581; *Presbury* v. *Commonwealth*, 9 Dana, (Ky.) 203 ; *Busey* v. *State*, 85 Md. 115; *George* v. *State*, 39 Miss. 570; *Williams* v. *State*, 37 Miss. 407, 409 ; *Frank* v. *State*, 39 Miss. 705; *Croy* v. *State*, 32 Ind. 384; *Chase* v. *People*, 40 Ill. 352; *State* v. *Davis*, 80 N. C. 412; *M'Clure* v. *State*, 1 Yerg. 206 ; *Rockwell* v. *Elderkin*, 19 Wis. 367; *Bonneville* v. *State*, 53 Wis. 680; *Hollingsworth* v. *Duane*, 4 Dall. 353 ; *State* v. *Williams*, 38 La. Ann. 361; *State* v. *Powers*, 10 Ore. 145. See *Smith* v. *Earle*, 118 Mass. 531; *Daniels* v. *Lowell*, 139 Mass. 56; *Jeffries* v. *Randall*, 14 Mass. 205. In several of the States there are cases which rest upon a different view, which are not in conformity with the decisions of this court. In New Jersey, Virginia, West Virginia, Arkansas and perhaps some other States, the doctrine has been embodied in a statute, providing in substance that no exception against a juror on account of any legal disability shall be allowed after he is sworn. *Kohl* v. *Lehlback*, 160 U. S. 293. *Commonwealth* v. *Jones*, 1 Leigh, 598. *State* v. *McDonald*, 9 W. Va. 456. *Collier* v. *State*, 20 Ark. 36. *Casat* v. *State*, 40 Ark. 511.

The defendants contend that this case should not be governed by the general rule stated above, because, in an examination on

the *voir dire*, a juror cannot be asked questions whose answers might tend to his infamy or disgrace. None of the cases above cited refer to this limitation on the right to examine, as a reason for making an exception to the rule. In three of them, *Busey* v. *State*, 85 Md. 115, *State* v. *Williams*, 38 La. Ann. 361, *State* v. *Powers*, 10 Ore. 145, the alleged disqualification of the juror was his previous conviction of a crime. It is true that in many cases the opportunity of the parties to investigate facts and ascertain the qualifications of jurors, is stated as one of the important reasons of the rule, and the opportunity to examine on the *voir dire* is often a convenient method of investigation. But it is not the only method. Revised Laws, c. 176, § 9, provide that, to any person indicted for a crime punishable with death or imprisonment for life, a list of the jurors who have been returned must be furnished at the expense of the Commonwealth.

In this and other ways, interested parties have opportunities to know who are to serve as jurors, and to make inquiry in regard to their qualifications. In many cases the failure of a party to ascertain a disqualification before the verdict is treated as a waiver of his rights in this respect. In particular cases this view is often correct and sufficient. But we are of opinion that the rule rests upon a foundation that is broader. While the duty of ascertaining that the persons drawn as jurors are properly qualified rests primarily upon the Commonwealth through its designated officers, the parties to trials in court have an interest in the same subject, and upon them rests a responsibility for the proper protection of their own rights. It is expected that they will consider somewhat the qualifications of those who are to sit in judgment in their causes. Our system provides for challenges by the parties, both in civil and criminal cases, which may be peremptory as well as for cause. If, notwithstanding the efforts of public officers to perform their duties, and such efforts as the parties choose to make for the protection of their rights in regard to qualifications of jurors, it is discovered after a verdict that a disqualified person has joined in the decision, the interests of justice require that the irregularity or accident shall be treated like other irregularities. The responsibility for it should be treated as resting in part upon the parties, while primarily it is upon the public authorities. If in

the opinion of the presiding judge, the disqualification of a juror has operated injuriously, and has tended to the return of an erroneous verdict, or has otherwise worked injustice, a new trial should be granted. A motion for a new trial for such a cause, like motions for new trials generally, should be addressed to the discretion of the court. It would be most unfortunate if, for an accidental error or omission hardly more than technical, it should be necessary to set aside a correct verdict on the motion of the defeated party, and to deprive the other of his rights obtained at great cost, and to expose him to the risks which attend postponement.

We are of opinion that the ruling was right.

*Exceptions overruled.*