Dorothy ALLEN, Administratrix of the Estate of George Allen, Deceased, as Administratrix and on her own behalf

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, John Doe Insurance Company, Richard Roe Insurance Company and Jane Doe Insurance Company; Paul Douglas Grant, individually and as Sheriff of Aiken County; Larry A. Self and Ronnie Busbee, individually and as Deputy Sheriffs of Aiken County; James W. Whitehurst, Ralph Gunnells and Henry Hiers, individually and as employees of the Sheriff's Office of Aiken County; Carroll Heath, individually and as detective for the City of Aiken; Paul Grant and James (Skeet) Perry, individually and as agents of the South Carolina State Law Enforcement Division (SLED); The County of Aiken; The City of Aiken; John Doe and Richard Roe, other employees of the City of Aiken, the County of Aiken, the South Carolina State Highway Patrol, and South Carolina State Law Enforcement Department.

Civ. A. No. 80–0729–1.

United States District Court,
D. South Carolina, Aiken Division.

June 3, 1981.

Fred Henderson Moore, Charleston, S. C., for plaintiff.

Henry Summerall, Jr., Aiken, S. C., for defendants Carroll Heath and City of Aiken.

C. Wesley Smith, Aiken, S. C., for defendant County of Aiken.

Samuel F. Painter, Nexsen, Pruet, Jacobs & Pollard, Columbia, S. C., for defendants Fidelity and Deposit Co. of Maryland and Paul Douglas Grant.

Joseph C. Coleman, Columbia, S. C., for defendant Whitehurst; Co-Counsel for defendants Self, Busbee, Gunnells and Hiers.

James M. Holly, Asst. Atty. Gen., Columbia, S. C., for Paul Grant and Perry; Co-Counsel for Self, Busbee, Gunnells and Hiers.

## ORDER

FALCON B. HAWKINS, District Judge.

This is an action for damages brought under the "Civil Rights Act" pursuant to Title 42, United States Code Sections 1983, 1985, 1986 and 1988, and various amendments to the United States Constitution. The action arises from the fatal wounding of one George Allen by defendant Ronald Busbee, who was then a Deputy Sheriff of Aiken County, which occurred on April 19, 1974.

Plaintiff is the duly appointed, qualified and acting Administratrix of the estate of her deceased son, George Allen, by virtue of her appointment as such by the Probate Court of Aiken County.

In her complaint, plaintiff seeks to have the court invoke pendent jurisdiction to consider various claims based upon the laws of the State of South Carolina.

Plaintiff's complaint was filed on April 18, 1980, and the summons was issued that date.

Plaintiff originally represented herself in this action and signed the complaint *pro se.* The law firm of Moore, Brown, Gaines & Davis did not come into the case on plaintiff's behalf until a considerable time had elapsed after commencement of this action.

Plaintiff brought suit against numerous defendants, including the Sheriff of Aiken County and his official surety, two deputy sheriffs of Aiken County, three employees of the Sheriff's Office of Aiken County, a detective for the City of Aiken, two agents of the South Carolina Law Enforcement Division (SLED), the County of Aiken, the City of Aiken, and various unidentified defendants.

All of the identified defendants have filed motions for summary judgment in their favor. In these motions, the aforementioned defendants assert that the instant action is barred as against them by certain statutes of limitations. After reviewing the memoranda of counsel and the applicable legal authorities and hearing the oral arguments of counsel, the court has concluded that these motions for summary judgment should be granted.

## I. ALLEGATIONS OF COMPLAINT

It is obvious from the complaint in this case that former Aiken County Sheriff, Paul Douglas Grant, is named as a party defendant because of his office as Sheriff of Aiken County at the time of the incident which gives rise to the complaint (see paragraph 5 of the complaint), and because of the official duties and responsibilities of that office (*i. e.*, as Sheriff, he was "responsible for policy, training, supervision and conduct" [of the Aiken County Sheriff's Department] *Id.*). Although the complaint is captioned so as to name him as a defendant both in an individual capacity and in an official capacity, there are no allegations of wrongful conduct on his part in the complaint which appear to be outside the scope of his duties and responsibilities as Sheriff and from which some individual responsibility or liability to the plaintiff could be inferred.

In the complaint, defendant Fidelity and Deposit Company of Maryland was identified as being the company which "furnished a bond required by the laws of the State of South Carolina on behalf of the County of Aiken and its employees." Plaintiff's complaint, paragraph 14.

Paragraph 9 of the complaint alleges that defendants Paul Grant and Perry were acting in their capacities as agents of the South Carolina Law Enforcement Division.

Paragraphs 6 and 7 of the complaint allege that defendants Self, Busbee, Whitehurst, Gunnells and Hiers, at all times related to the subject matter contained in the complaint, were acting in their official capacities as deputy sheriffs and/or agents, servants and employees of the Sheriff of Aiken County.

Plaintiff's complaint alleges that the acts and omissions complained of "were all acts and omissions of Aiken County and were done pursuant to official policies and practices of Aiken County" (paragraph 24; see also, paragraph 38).

Plaintiff's complaint further alleges that the acts and omissions complained of "were all acts and omissions of the City of Aiken and were done pursuant to official policies and practices of the City of Aiken" (paragraph 39; see also, paragraph 26), and that defendant Carroll Heath was a detective of the City of Aiken "and was acting in such capacity as agent, servant and employee of the City of Aiken" (paragraph 8; see also, paragraph 11), and that at all times relevant to the action and in all his actions described in the complaint that the defendant, Carroll Heath, was acting under color of State Law (paragraph 12).

## II. *AS TO ONE YEAR STATUTE OF LIMITATIONS*

■ The third cause of action set forth by plaintiff in her complaint appears to contain a claim based upon Section 1986 of Title 42 of the United States Code, which is cited in paragraph 1 of the complaint. Section 1986 is dependent upon the plaintiff establishing the elements of a claim pursuant to Section 1985 of Title 42 of the United States Code for "conspiracy". Section 1986 provides that an action thereunder must be commenced within one year after the cause of action has accrued.

Plaintiff's cause of action, if any, under Section 1985 accrued on the death of plaintiff's decedent or the occurrence of the alleged wrongful neglect, refusal or act. *Harris v. Obenshain*, 452 F.Supp. 1172 (D.Va.1978); *Wilkinson v. Hamel*, 381 F.Supp. 766 (D.Va.1974); *Huey v. Barloga*, 277 F.Supp. 864 (D.Ill.1967).

Plaintiff's cause of action under Section 1985 accrued on April 19, 1974, and is barred because it was not commenced within one year thereafter. 42 U.S.C. § 1986.

## III. *AS TO THREE YEAR STATUTE OF LIMITATIONS*

Where no limitation periods are provided in a statute authorizing an action in federal court, it is well settled that the district courts must apply to such action the appropriate statute of limitations under state law. *Runyon v. McCrary*, 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Cox v. Stanton*, 529 F.2d 47, 49 (4th Cir. 1975).

### A. *Defendants Sheriff and Surety*

■ In South Carolina, all actions which are brought against a sheriff by "virtue of his office or by omission of official duty" must be brought within *three (3)* years. S.C.Code Ann. § 15–3–540 (1976).

The statute of limitations in the present case began to run on April 19, 1974, which according to the complaint is the date when the plaintiff's decedent was shot and killed by an Aiken County deputy. This was when the plaintiff knew, or had reason to know, of the conduct which is the basis for her causes of action. *See, Cox*, 529 F.2d at 49. Inasmuch as this action was not commenced until April 18, 1980, when the summons and complaint were filed, it is obvious that all causes of action against this defendant and his surety are barred by the three (3) year statute of limitation provided by the state statute. The plaintiff has suggested no reason why this period can or should be tolled.

### B. *Defendants Paul Grant, Perry, Self, Busbee, Whitehurst, Gunnells, and Hiers*

■ Section 15–3–540 of the South Carolina Code establishes a three year period for an action against "a sheriff, coroner, or

constable upon a liability incurred by the doing of an act in his official capacity and in virtue of his office or by the omission of an official duty . . . ."

The term "constable" in Section 15–3–540(1) of the South Carolina Code embraces in this action defendants Paul Grant and Perry and the conduct alleged to have been committed by them.

The allegations in the complaint concerning defendants Self, Busbee, Whitehurst, Gunnells and Hiers relate only to actions taken in their official capacities as deputy sheriffs and/or agents of the Sheriff of Aiken County. As such, they possess the power "to assist in the detection of crime and the enforcement of the criminal laws of this State." S.C.Code Ann. § 23–3–10 (1976). This power, which is the main duty of agents of the South Carolina Law Enforcement Division, is identical to that power provided State constables, both paid and unpaid, by Section 23–1–60. The special limitations period provided by Section 15–3–540(1) must be construed to be activated by the type of official conduct engaged in rather than the mere title of the public official involved. Otherwise, officials performing important public duties identical to those of a constable would not be embraced within this limitations period simply because of a difference in title. Further support for this conclusion is presented in the succeeding paragraphs.

Additionally, the term "constable" as used in Section 15–3–540(1) should be construed to be used in the generic sense so as to include within its meaning all peace and law enforcement officers. *See, Myers v. Bull*, 599 F.2d 863, 864 (8th Cir. 1979) (which deals with the application of a Missouri statute similar to Section 15–3–540(1) to police officers); *Peterson v. Fink*, 515 F.2d 815, 817 (8th Cir. 1975) (where the court, in an action brought pursuant to Section 1985 of Title 42 of the United States Code, construed the same Missouri statute as being applicable to agents of the Federal Bureau of Investigation); *Williford v. Crenshaw*, No. 79–1787–2 (D.S.C.1979) (where Section 15–3–540(1) was applied to municipal police officers in an action brought pursuant to Title 42, United States Code Section 1983); *State v. Franklin*, 80 S.C. 332, 338–9, 60 S.E. 953, 955 (1908); 70 Am.Jur.2d, Sheriffs, etc., § 24.

When this statute of limitations originally was enacted in 1870, § 115 of 1870 S.C. Acts 447, constables with general law enforcement powers existed at the city, local, county and state levels and, together with county sheriffs and to a lesser extent coroners, were the principal providers of law enforcement for the State of South Carolina. General Statutes of South Carolina, 1871, Title V, Chapter XXVI (Constables), §§ 5, 10 at 192; Chapter XVI (Constables), §§ 44, 45 at 102; Chapter XX (Sheriffs) at 143; Chapter XXI (Coroners) at 156. Therefore, one of the apparent objects of Section 15–3–540(1) when originally enacted was to provide a special limitations period for officials performing law enforcement duties. The court takes judicial notice that the existing statutes of the State of South Carolina provide for many levels and types of law enforcement agencies and officials. This statute should receive a construction now as will effectuate this object which it sought to accomplish originally. *See, Willison v. Watkins*, 28 U.S. 43, 7 L.Ed. 596 (1830) (which arose in South Carolina). For this reason, the limitations period in Section 15–3–540(1) would apply to all of the aforementioned defendants who are alleged to have engaged in certain unlawful conduct as law enforcement officers.

### C. *Defendant County of Aiken*

By the clear language of the statute, Section 15–3–540 would not apply to an action brought against the County of Aiken.

The only named defendants at the county level are the Sheriff and his deputies. The complaint alleges that all were acts and omissions of Aiken County and were done pursuant to official policies and practices of Aiken County.

In Aiken County, as in most other counties of South Carolina, law enforcement is

the sole responsibility of the elected sheriff and his deputies appointed by him whose duties are specified by the constitution of the State, the statutes and case law. It has long been clear that the County has no authority over the Sheriff or his deputies as to matters of hiring, firing, training, discipline or the manner in which the duties of the office are carried out. The sheriff in South Carolina has under common law and statutes always been solely responsible for his own acts and those of his deputies.

In South Carolina, the sheriff and his deputies have the sole responsibility for law enforcement. The county government cannot hire or fire the deputies nor can it tell the sheriff the manner or method by which he and his deputies are to perform the official acts of his office.

■ In *Willis v. Aiken County*, 203 S.C. 96, 102, 26 S.E.2d 313, 315 (1943), the South Carolina Supreme Court observed that "[t]he office of under or deputy sheriff is one of the oldest known to the law; it had its origins in the common law." In *State v. Johnson*, 123 S.C. 50, 53, 115 S.E. 748, 749 (1923), it was determined that "[t]he position of under or deputy sheriff is a common law office . . . ." As a public officer, *Willis*, 203 S.C. at 102, 26 S.E.2d at 315, a deputy sheriff has been considered, both under South Carolina common and statutory law, as the agent of the sheriff, not as "employee" of the county. *See, Trammell v. Fidelity and Casualty Co. of N. Y.*, 45 F.Supp. 366, 370–371 (D.S.C.1942); *Willis*, 203 S.C. 96, 26 S.E.2d 313; *Ex Parte Hanks*, 15 S.C.Eq. (Chev.Eq.) 203, 210 (1840). A deputy's term is no greater than the term of the appointing sheriff. *Sanders v. Belue*, 78 S.C. 171, 176–177, 58 S.E. 762, 764 (1907).

Accordingly, a deputy, as the personal representative of the sheriff, serves at the sheriff's "pleasure", not that of the county. In *Barksdale v. Posey*, 20 S.C.L. (2 Hill) 647, 652 (1835), the court observed that the sheriff's "power for appointing and dismissing his deputies and assigning them their respective duties at his pleasure gives him *an unlimited control over them.*" (emphasis added). The court observed that "the sher-

iff himself is immediately responsible for the manner in which the duties of his office are conducted and certainly there is nothing in the nature of the office . . . which either directly or impliedly takes away from him the right to command implicit obedience . . . ." *Id.* at 652. This principle was codified in what became Section 23–13–10 of the South Carolina Code. In *State v. Goldsmith*, 96 S.Ct. 484, 489, 81 S.E. 147, 149 (1913), the court confirmed that the provision granted the sheriff virtually unlimited removal powers. Thus, it is abundantly clear that historically in South Carolina the deputy sheriffs are answerable only to the sheriff and not to the county government.

The provision contained in Section 23–13–10 making the sheriff "answerable for neglect of duty or misconduct in office of any deputy" is of vast importance here. Even at common law, a deputy was the personal agent and representative of the sheriff, and the sheriff was legally accountable for any negligent or intentional acts or omissions on the part of his deputies. *See, Scott v. Vandiver*, 476 F.2d 238, 242–243 (4th Cir. 1973); *Willis*, 203 S.C. at 104, 26 S.E.2d at 315; *Trammell*, 45 F.Supp. at 368–369; *Rutledge v. Small*, 192 S.C. 254, 257, 6 S.E.2d 260, 262 (1939); *Barksdale*, 20 S.C.L. (2 Hill) at 652; *Teasdale v. Hart*, 2 S.C.L. (2 Bay) 173 (1798).

■ No direct acts of the defendant County of Aiken were alleged that would even raise the issue of respondent superior, and it has long been established that the doctrine does not apply to actions brought under Title 42, United States Code Section 1983, as personal involvement must be shown.

Further, by long established custom and practice now firmly established as the policy and law of this State, the County of Aiken is precluded from exercising any supervisory function or control over the sheriff or his deputies, and, accordingly, it has been relieved of responsibilities for him or his deputies in the performance of their official duties. Because state law controls where vicarious liability for acts of the sheriff or his deputies is sought, *Dailey v.*

*Byrnes,* 605 F.2d 858 (5th Cir. 1979), the County of Aiken could not be liable for the acts of the sheriff or his deputies. Where the immunity claimed by the defendant was well established at common law at the time Section 1983 was enacted, as herein, and where the rationale is compatible with the purposes of the Civil Rights Act, the statute has been construed to incorporate that immunity. *Owen v. City of Independence, Mo.,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

Here the immunity of the County of Aiken is an established precedent of long standing, and the rationale is compatible with Section 1983.

To allow the County to be held accountable for the actions of the sheriff and his deputies over whom it has no control as to the manner in which they perform their official duties and whom it cannot hire, fire, discipline or train relative to the performance of the duties of their offices, would be to subject the County to unbridled and unlimited liability over which it has no control and over which it is prevented from exercising any such control. There can be no responsibility for the acts of another where there is no authority to control such acts or the persons perpetrating such acts. To hold otherwise would be to authorize unlimited raids on the public treasury which would bankrupt the county and its tax-paying citizens. To prevent such is precisely the purpose of the statute fixing responsibility and authority in the sheriff. As the sheriff has such responsibility and authority, it is to him, and him alone, that the plaintiff must look for a redress of her grievances, and summary judgment in favor of the defendant, County of Aiken, must be entered and this action must be dismissed as to defendant, County of Aiken.

### D. *Defendant City of Aiken*

■ The language of Section 15–3–540 would not apply to an action brought against the City of Aiken. However, it is the opinion of this court that summary judgment should be granted in favor of the defendant, City of Aiken. None of the acts and omissions claimed by the plaintiff were done pursuant to any official policies and practices of the City of Aiken. In addition, there was no failure of the City to supervise, train, discipline and control its personnel in the exercise of their official functions, and, in any event, no such failure could have contributed to the death of George Allen.

### E. *Defendant Carroll Heath*

■ In light of the terms of Section 15–3–540, the question to appropriately consider is whether the defendant, Heath, is included within the definition of "constable."

The well-settled general rule of statutory construction is that the words used in the statute should be taken in their plain and ordinary meaning. *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *Clouse v. American Mutual Liability Ins. Co.,* 232 F.Supp. 1010 (D.S.C.1964) ("sensible construction"); *Federal Ins. Co. v. Speight,* 220 F.Supp. 90 (D.S.C.1963) ("plain meaning"); *Worthington v. Belcher,* 264 S.E.2d 148 (S.C.1980); see also, numerous cases cited in Volume 17, West's South Carolina Digest, *Statutes,* Key No. 188.

The plain and ordinary meaning of the word "constable" is any law enforcement officer. Webster's New World Dictionary (College Edition 1954) defines "constable" as "a policeman." Black's Law Dictionary (Revised 4th ed. 1968) at p. 383, defines constable as follows:

In American law. An officer of a municipal corporation (usually elected) whose duties are similar to those of the sheriff, though his powers are less and his jurisdiction smaller. He is to preserve the public peace, execute the process of magistrates' courts, and of some other tribunals, serve writs, attend the sessions of the criminal courts, have the custody of juries, and discharge other functions sometimes assigned to him by the local law or by statutes. *Allor v. Wayne County,* 43 Mich. 76, 4 N.W. 492.

In a jury instruction affirmed on appeal by the Supreme Court of South Carolina, a

"constable" is said to have all of the duties of a law enforcement officer, and in particular: "a constable stands on the same footing as a sheriff." *State v. Franklin*, 80 S.C. 332, 338, 60 S.E. 953, 955 (1908).

Other United States District Judges, interpreting South Carolina law, have ruled that any law enforcement officer is a "constable" within the meaning of Section 15–3–540. *See, Williford v. Crenshaw*, No. 79–1787–2 (D.S.C.1979); *see also, Dawson v. Fields*, No. 80–490–4 (D.S.C.1980).

Accordingly, this court finds and holds that the defendant, Carroll Heath, was a "constable" within the provisions of Section 15–3–540 of the Code of Laws of South Carolina, 1976, and since the action was not brought within three years, plaintiff's right of action is barred by the three-year statute of limitations as to the defendant, Heath.

### IV. AS TO TWO YEAR STATUTE OF LIMITATIONS

Plaintiff further alleges, essentially, that her decedent was shot by a law enforcement officer "willfully, negligently, maliciously, intentionally and with reckless disregard for the consequences of the act." (See complaint, paragraph 18). Plaintiff also alleges that the decedent "in no way posed a threat to the defendant [deputy's] ... safety." (complaint, paragraph 20). It would appear, therefore, from these and other allegations of the plaintiff's complaint that the essential cause of action constitutes what would be the intentional tort of assault and battery under the common law of South Carolina. *See, Herring v. Lawrence Warehouse Co.*, 222 S.C. 226, 241, 72 S.E.2d 453, 458 (1952); 6A C.J.S. Assault and Battery § 2. While the parties in this action have fully apprised the court of Section 15–3–550(1), which provides for a two year limitations period to be applied to such a claim, it is unnecessary for this court to give further consideration to this issue inasmuch as the court has chosen to base its ruling on the other grounds previously stated.

### V. AS TO UNIDENTIFIED DEFENDANTS

On January 14, 1981, this court by oral order dismissed the named-defendants, "other employees of the South Carolina State Highway Patrol and [the] South Carolina State Law Enforcement Department." The five remaining named-defendants, Joe Doe Insurance Company, Richard Roe Insurance Company, Jane Doe Insurance Company, John Doe and Richard Roe, were never served with the summons and complaint in this matter, and any action which plaintiff might have had against these defendants is now barred by the applicable statute of limitations.

### VI. ORDER

Now, therefore, it is

ORDERED, that the complaint against the defendants, Fidelity and Deposit Company of Maryland, John Doe Insurance Company, Richard Roe Insurance Company, Jane Doe Insurance Company, Paul Douglas Grant, individually and as Sheriff of Aiken County, Larry A. Self and Ronnie Busbee, individually and as Deputy Sheriffs of Aiken County, James W. Whitehurst, Ralph Gunnells and Henry Hiers, individually and as employees of the Sheriff's Office of Aiken County, Carroll Heath, individually and as detective for the City of Aiken, Paul Grant and James (Skeet) Perry, individually and as agents of the South Carolina Law Enforcement Division (SLED), the County of Aiken, the City of Aiken, and John Doe and Richard Roe, as other employees of the City of Aiken and the County of Aiken, be, and are hereby, dismissed with prejudice; and, all named defendants having been dismissed as parties hereto, that this matter be, and the same is hereby ended, and the cause of action sued upon forever barred.

AND IT IS SO ORDERED.